## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| KEEHAN TENNESSEE INVESTMENT, LLC, et al., | ) | CASE NO.: 1:14-cv-00994-DCN |
| | ) | |
| Plaintiffs, | ) | JUDGE: DONALD C. NUGENT |
| | ) | MAGISTRATE JUDGE WHITE |
| v. | ) | |
| | ) | |
| GUARDIAN CAPITAL ADVISORS, INC., et al., | ) | |
| | ) | |
| Defendants, | ) | **AMENDED  COMPLAINT** |
| | ) | |
| and | ) | |
| | ) | |
| GEORGE V. CRESSON, | ) | |
| 2026 Geri Lane | ) | |
| Hillsborough, California  94010-6322, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GEORGE V. CRESSON, | ) | |
| d/b/a DEVELOPMENT FINANCE, L.P. | ) | |
| c/o Non-commercial Registered Agent | ) | |
| 9190 Double Diamond Parkway | ) | |
| Reno, Nevada 89521, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KENNETH A. MILLER, | ) | |
| c/o Guardian Capital Advisors | ) | |
| 2269 Chestnut Street, Suite 115 | ) | |
| San Francisco, California  94123, | ) | |
| | ) | |
| New Party Defendants. | ) | |
| | ) | |
| **SERVE ALSO:** | ) | |
| | ) | |
| George V. Cresson | ) | |
| 237 Kearny Street #158 | ) | |
| San Francisco, CA 94108 | ) | |

Plaintiffs, Keehan Tennessee Investment, LLC, David Keehan, Donald J. Keehan, Sr., Durham Ridge Investments, LLC, Westlake Briar, LLC, Keehan Trust Funding, LLC, Donald J. Keehan, Jr. and 951 Realty Ltd. (sometimes collectively referred to as the "Plaintiffs"), through counsel, and for their Complaint against Defendants, Guardian Capital Advisors, Inc. ("GCA"), Kenneth A. Miller ("Miller"), Praetorium Secured Loan Fund I, L.P. ("PSLF"), George V. Cresson ("Cresson"), Cresson d/b/a Development Finance. L.P. ("Development")(GCA, Miller, PSLF, Cresson, and Development are sometimes referred to collectively as "Defendants"), hereby allege as follows:

## PARTIES

1.      Plaintiff, Keehan Tennessee Investment, LLC ("KTI"), is an Ohio limited liability company having a principal place of business in Avon, Ohio.

2.      Plaintiff, David Keehan, is an individual residing in Avon, Ohio.

3.      Plaintiff, Donald J. Keehan, Sr., is an individual residing in Fort Meyers, Florida.

4.      Plaintiff, Durham Ridge Investments, LLC ("Durham Ridge"), is an Ohio limited liability company having a principal place of business in Lagrange, Ohio.

5.      Plaintiff, Westlake Briar, LLC ("Westlake Briar") is an Ohio limited liability company having a principal place of business in Avon, Ohio.

6.      Plaintiff, Keehan Trust Funding, LLC ("Keehan Trust"), is an Ohio limited liability company having a principal place of business in Avon, Ohio.

7.      Plaintiff, Donald J. Keehan, Jr., is an individual residing in Avon, Ohio.

8.      Plaintiff, 951 Realty Ltd. ("951"), is an Ohio limited liability company having its principal place of business located in Avon, Ohio.

9.      Upon information and belief, Defendant GCA is a California corporation with its principal place of business located in San Francisco, California.

10.     Upon information and belief, Defendant Miller is an individual residing in the State of California and is a principal, manager and/or managing partner of GCA.

11.     Upon information and belief, Defendant PSLF is a Delaware limited partnership with its principal place of business located in Reno, Nevada.

12.     Upon information and belief, Defendant Cresson is an individual residing in Hillsborough, California.   Upon information and belief, Cresson does business as and is a principal, manager, and/or managing partner of Development.

## JURISDICTION

13.     This action was removed from state court in Lorain County, Ohio by virtue of diversity of jurisdiction and is now venued in this Court.

14.     This Court has jurisdiction over the subject matter of this action, as the parties entered into some or all of the loan documents at issue in Lorain County, Ohio, Defendants transacted business in Lorain County when they contracted to provide financing to Plaintiffs, and the claims giving rise to this litigation arose in Lorain County, Ohio.

## FACTUAL ACCOUNT

15.     Plaintiff KTI and other principals of KTI, namely, Plaintiffs, David Keehan, Donald J. Keehan, Jr. and Donald Keehan, Sr. purchased an ownership interest in a residential and golf community development project located in the community of Arrington, Tennessee, approximately thirty (30) miles from Nashville (known as "Stillwater" and sometimes referred to herein as the "Project").

3

16.     The Project is to be developed into a championship golf course, club house and related amenities, utilizing approximately 170 acres of land with the balance of the available acreage subdivided and improved for the sale of residential lots for development of an upscale residential community in and around the golf course facilities.

17.     By reason of the credit collapse that occurred in 2008 and financial problems facing the original principal lender funding the construction of the Project ("Original Lender"), the Original Lender ceased funding the Project, bringing the development of the Project to a halt. As a result of the actions of its Original Lender, the principals of Plaintiff KTI were forced to seek alternative means of financing in order to complete construction of the Project.

18.     On or about July 2, 2013, the principals of KTI negotiated a resolution with the Original Lender and a group known as TN Fore Investment Partners, LLC, Fields-Realty, LLC and their respective principals (collectively "TN Fore") whereby TN Fore acquired the secured position previously held by the Original Lender.  TN Fore also acquired a minority equity ownership interest in the Project.

19.     Subsequent to the consummation of the resolution with the Original Lender, a dispute arose between TN Fore and the principals of KTI relating to the management of the Project culminating in the issuance of a Notice of Default by TN Fore dated November 18, 2013.

20.     Pursuant to the Notice of Default, TN Fore, *inter alia*, called its loan and sought a buyout of its minority equity position in the Project from the principals of Plaintiff KTI, seeking in excess of $12 Million.  In conjunction with the buyout of TN Fore, Plaintiff KTI was also required to purchase the equity interests of Stillwater Group, LLC and Arrington Gold Subdivision, LLC, and their respective principals (collectively "Scheel").

4

21.     On or about December 23, 2013 and March 3, 2014, Defendant GCA individually as a lender and/or as an agent for other lenders, entered into a loan term sheet and loan commitment respectively with KTI and other principals of KTI, namely, Plaintiffs, David Keehan, Donald J. Keehan, Jr. and Donald Keehan, Sr.   The loan commitment related to a $24,500,000.00 refinancing of the Project.   On March 3, 2014, Defendant Cresson issued a commitment letter for a $3,500,000.00 line of credit to KTI to be used as a construction loan for the Project (the "Construction Loan").   Copies of the December 23, 2013 term sheet and March 3, 2014 commitment letters for the $24,500,000.00 loan and the $3.5 million Construction Loan are attached hereto and incorporated herein as Exhibits "A-1," "A-2" and "A-3," respectively (collectively, the "Commitment").

22.     At all times relevant, Defendant Cresson represented and/or held Development out as  a viable and operating legal entity existing and in good standing under the laws of the State of Nevada with all necessary power to perform and comply with the provisions of the Construction Loan.

23.     At all times relevant, GCA, Development and Cresson knew that time was of the essence regarding the need for financing so that  KTI and its principals could pay off the loans held by TN Fore and buy out the equity held by TN Fore and Scheel (hereinafter the "Take Out Loan"). The financing was also necessary to acquire the Project free and clear of the claims and interests of TN Fore and Scheel.

24.     At all times relevant and as evidenced by the Commitment, GCA, Development Finance and Cresson represented to Plaintiffs that they were prepared to fund the Take Out Loan up to $24,500,000.00, and the $3,500,000.00 Construction Loan.

25.     Due to the demands being made by TN Fore and Scheel of the commencement of foreclosure and sale of the Project, KTI negotiated several short forbearance periods with TN Fore and Scheel in order to provide GCA, Development and Cresson with additional time to conduct and conclude its due diligence relative to the financing contemplated by the Commitment.

26.     Based on assurances from GCA, Development and Cresson that funding would be arrive quickly, KTI negotiated a one (1) week extension with TN Fore until February 7, 2014, for a per diem charge of $1,800.00 per day.  GCA was to pay the per diem charge. GCA did not perform.

27.     On or about February 7, 2014, the principals of TN Fore, GCA, and KTI had a telephone conversation during which GCA assured the parties that it could provide a short-term extension fee of $1,200,000.00 to support an extension of the deadline for the buyout of TN Fore and Scheel until March 7, 2014.  Based upon this discussion, an extension was granted by TN Fore until March 7, 2014, provided the extension was paid  in two installments, one in the amount of $500,000.00 due on February 7, 2014 and $700,000.00 due on February 18, 2014. The $500,000.00 installment was paid by Plaintiff David Keehan out of the proceeds of a personal loan from a local bank.  GCA, however, failed to provide the $700,000.00 second installment payment by the February 18, 2014 deadline.

28.     Thereafter, GCA, Development, and Cresson, agreed to loan $700,000.00 (hereinafter, the "Bridge Loan") to KTI in order to satisfy the broken promise made by GCA to fund $700,000 by February 18th in order to obtain the short term forbearance to March 7, 2014 from TN Fore and Scheel.

29.    Although Cresson executed the Bridge Loan Agreement on March 4 as Manager of Praetorium Management, LLC (the General Partner of PSFL), Development was the Lender originally agreed to by the parties for the Bridge Loan.  However, at the eleventh hour and on the date of execution, Cresson, unilaterally changed the identity of the lender from Development to PSFL, another entity owned and controlled by Cresson.

30.    Upon information and belief, Development was not a limited partnership in good standing in the State of Nevada as of March 4, thereby necessitating the last-minute change to a viable entity, PSFL, to fund and execute the Bridge Loan.  Cresson has represented himself to Plaintiffs as a principal and a manager of both PSFL and Development.  Upon information and believe, common ownership exists between Development and PSLF.

31.    Fully aware of the disastrous results that would occur if KTI was unable to obtain forbearance from TN Fore and Scheel and of the inability of Plaintiffs to secure alternate funding for the Bridge Loan, GCA, PSFL and Cresson demanded substantial fees and imposed onerous collateral requirements for the Bridge Loan.

32.    The substantial fees charged by GCA, PSFL and/or Cresson for providing the Bridge Loan, and the payoff of certain mortgages on the commercial properties pledged as collateral by the Plaintiffs to secure repayment of the Bridge Loan, increased the principal amount of the Bridge Loan to $2,995,000.00, as evidenced by a cognovit promissory note and associated Loan Agreement, both dated March 4, 2014, copies of which are attached hereto and incorporated herein collectively as Exhibit "C" (the "Bridge Loan Note").

33.    As another onerous condition for additional security for repayment of the Bridge Loan, the PSFL and Cresson required Plaintiffs, David Keehan, Donald J. Keehan, Jr., Donald J. Keehan, Sr., Durham Ridge Investments, Westlake Briar, 951, and Keehan Trust to execute

7

personal cognovit guarantees in favor of Lender.  Copies of the personal cognovit guarantees (the "Guarantees") are attached hereto and incorporated herein collectively as composite Exhibit "D".

34.     In addition to the Guarantees, Plaintiffs Durham Ridge Investments, 951, and Westlake Briar, were required by PSFL and Cresson to grant PSFL mortgages on certain commercial properties located in the State of Ohio as additional security for repayment of the Bridge Loan.  Plaintiff Keehan Trust was also required to pledge certain equity interests in a publicly-traded company pursuant to a Security Agreement.  Copies of the Mortgages and Security Agreement are voluminous and are in the possession of Defendants so they are not attached hereto.

35.     The Bridge Loan Note and related Loan Agreement contained cognovit provisions allowing PSFL to obtain judgment against KTI without notice, without hearing, and without the opportunity to defend.

36.     Plaintiffs had no other alternative than to accept the onerous terms imposed by PSFL and Cresson.

37.     Despite having issued the Commitments on December 23, 2013 and March 3, 2014, and despite the fact that Plaintiffs fully complied with all conditions imposed by GCA, Development and Cresson under the Commitment, GCA, Development and Cresson failed to close the Take Out Loan and Construction Loan by April 15, 2014 as agreed.

38.     Since Guardian, Development and Cresson failed to provide the Take Out Loan and Construction Loan as and when promised,  on or about April 2, 2014, TN Fore served a Notice of Foreclosure stating, *inter alia*, that by virtue of the power of sale contained in the Deed of Trust TN Fore held as security against the Project for payment of its loans, TN Fore intended

to sell the real estate comprising the Project at a non-judicial foreclosure sale set for 12:00 noon on Thursday, April 24, 2014. A copy of the Notice of Foreclosure is attached hereto and incorporated herein as Exhibit "B".

39.     Despite having actual knowledge that TN Fore was proceeding to sell the Project at foreclosure sale on Thursday April 24, 2014, GCA continued to represent to Plaintiffs that it would be able to close the Take Out Loan in sufficient time to payoff TN Fore and stop the pending foreclosure sale.

40.     In fact, loan documents relating to the Take Out Loan and Construction Loan were drafted and fully negotiated by and between KTI and GCA and Development and Cresson, and execution copies of the loan documents were tendered to GCA and the other lender that was funding the Take Out Loan by Wednesday, April 16, 2014.

41.     At all times relevant through and including Monday, April 21, 2014 (a mere three days before the foreclosure sale), Plaintiffs and/or their representatives were in constant contact with GCA, Development and Cresson and/or its representatives in an effort to determine the status of the Take Out Loan and Construction Loan. At approximately 6:43 p.m. on Monday, April 21, 2014, counsel purportedly representing one of the  lenders identified under the March 4, 2014 Commitment, sent a letter to Plaintiffs' counsel via email in which he notified Plaintiffs for the first time since the Commitment was issued that: ". . . Davidson Kempner Capital Management, LP ("DKCM") .... never agreed to make the Potential Loan, and has never represented to Borrower, verbally or in writing, that it would participate in the Potential Loan by a particular date. Further, Guardian Capital is not an agent of, and is not affiliated with, DKCM . . .." A copy of the transmittal email and April 21, 2014 letter are attached hereto and incorporated herein collectively as Exhibit "E".

42.    Despite disavowing any affiliation with GCA or that GCA was an agent of DKCM, counsel for DKCM went on to say: ". . . the only actual communication between DKCM and Borrower – an in-person meeting between D.J. Keehan and Louis Littman on Monday, April 14 – Mr. Littman conveyed that DKCM's due diligence was ongoing; that DKCM's management had not yet approved the Potential Loan; and that DKCM was not likely to be in a position to close by April 24, 2014."

43.    As a result of the April 21, 2014 correspondence disavowing DKCM's obligation to close the Take Out Loan, it was evident that GCA, Development and Cresson would not be able to perform under the Commitment in time to save the Project from foreclosure sale. Plaintiffs immediately took  steps in order to mitigate the loss of the Project, including, but not limited to, (i) retaining bankruptcy counsel in Tennessee and funding a $100,000.00 retainer for said counsel for the purpose of preparing an emergency bankruptcy filing under Chapter 11 of the Bankruptcy Code; (ii) commencing and/or continuing negotiations with TN Fore in order to seek a temporary voluntary stay of the foreclosure sale in order to provide additional time for Lender to fund the Take Out Loan; and (iii) negotiating with other possible lending sources in a last ditch effort to obtain take out financing in time to save the Project from foreclosure sale.

44.    As a result of exhaustive efforts, Plaintiffs negotiated a $17,502,500.00 take out loan from an alternative source (the "Alternative Take Out Loan") and closed that take out loan on the afternoon of Wednesday, April 23, 2014.  As a result, the TN Fore foreclosure sale was cancelled.

45.    However, as a material condition of obtaining the Alternative Take Out Loan the alternative financing source required a majority ownership interest in the Project.

10

46.     With time running out, Plaintiffs had no alternative but to accept the terms and conditions required by the alternative financing source and were forced to sell a majority interest in the Project to the principal of the alternative financing source.

47.     In addition to losing a majority ownership interest in the Project, valued in excess of $20,000,000.00, the Bridge Loan was not paid off as contemplated under the Commitments. As a result,  PSFL, as the holder of the Bridge Loan and related Guarantees, Mortgages and Security Agreement,  has obtained judgment against Plaintiffs by confession on the Bridge Loan Note and Guarantees which has and will continue to cause irreparable injury and harm to Plaintiffs.

**COUNT ONE**

48.     Plaintiffs incorporate Paragraphs 1 through 47, as if fully rewritten herein.

49.     Plaintiff KTI fully performed and/or satisfied its obligations under the terms and conditions of the Commitments.

50.     GCA, Development and Cresson breached the terms of the Commitments by failing to close the Take Out Loan and Construction Loan by April 15, 2014 and/or prior to the foreclosure sale on April 24, 2014 as agreed.

51.     As a direct and proximate result of the Defendants GCA, Development and Cresson's breach of the Commitments, Plaintiffs have been damaged in an amount in excess of $25,000.00, as will be more fully determined at trial.

**COUNT TWO**

52.     Plaintiffs incorporate Paragraphs 1 through 51, as if fully rewritten herein.

53.     Defendants GCA, Development, Cresson and PSFL were aware that in order to save the Project, Plaintiffs had no other alternative than to enter into the Bridge Loan and

11

collateral guarantees with cognovit provisions required by GCA, Development, Cresson and PSFL. The circumstances forcing Plaintiffs into entering into the Bridge Loan and collateral guarantees with cognovit provisions were caused by GCA and by PSFL. GCA and PSFL benefitted handsomely from the Bridge Loan.

54.     By reason of the wrongful conduct of Defendants GCA, Development, Cresson and PSFL and the substantial damages Plaintiffs have sustained as described herein, the obligations represented by the Bridge Loan Note, the Guarantees, the Mortgages and the Security Agreement should be invalidated and rendered null and void under principals of economic duress and equitable subordination and any liens, claims or interests held by Defendants GCA, Development, Cresson and PSFL should be ordered released of record.

<u>**COUNT THREE**</u>

55.     Plaintiffs incorporate Paragraphs 1 through 54, as if fully rewritten herein.

56.     GCA, Miller, Development, and Cresson and their respective agents and employees told Plaintiffs that GCA, Miller, Development and Cresson, along with lenders identified in the Loan Commitment, had the funds available to make the Take Out Loan and Construction Loan to Plaintiffs to fund the Project.

57.     At all times material, GCA, Miller, Development and Cresson knew that Plaintiffs relied upon GCA having the ability, itself or through the lenders it identified in the Commitments, to assemble all of the funds necessary for the Take Out Loan and the Construction Loan as and when required under the Commitments.

58.     Plaintiffs reasonably relied upon the representations of GCA, Miller, Development and Cresson and their respective agents and employees and entered into all agreements and paid all fees required by GCA, Miller, Development, Cresson and PSFL.

59.     At the times that GCA, Miller, Development and Cresson and their respective agents and employees made the representations pertaining to its ability to fund the Take Out Loan and the Construction Loan, GCA, Miller, Development, Cresson and their respective agents and employees knew that the statements were false because other participant lenders had not committed funds to be used for the Take Out Loan or the Construction Loan in time to close as and when required under the Commitments, or at the latest, in time to prevent the Project from being sold at foreclosure.

60.     Plaintiffs did not discover the false statements until April 21, 2014.

61.     As a direct and proximate result of the fraud of GCA, Miller, Development, Cresson and their respective agents and employees, Plaintiffs have been damaged in an amount exceeding $25,000.00, the full amount of which damages will be established at the trial of this matter.

62.     The fraud of GCA, Miller, Development, Cresson and their respective agents and employees was willful, wanton and/or in reckless disregard of the truth entitling Plaintiffs to an award of punitive damages in an amount to be determined at trial.

## COUNT FOUR

63.     Plaintiffs incorporate Paragraphs 1 through 62 as if fully rewritten herein.

64.     Defendants Development and PSFL have identical management, supervision and ownership in that Cresson is a principal, manager, and supervisor of each of them.

65.     Development and PSFL have substantially the same business purpose and operation including operating from the same premises for the purpose of real estate development financing.

66.     Development as PSFL are each so dominated by Cresson that neither have a separate mind, will or existence of their own.

67.     Development, PSFL and Cresson are fundamentally indistinguishable.

68.     Plaintiffs request a declaration from this Court that there exists a unity or identity of interest and ownership among Development, PSFL and Cresson such that any individuality and separateness between and among them have ceased and that Cresson is the alter ego of Development and PSFL.

69.     Cresson's control over Development and PSFL directly and proximately caused each of them to breach their respective agreements with Plaintiffs causing Plaintiffs damage in an amount exceeding $25,000.00, the full amount of which will be established at the trial of this matter.

**WHEREFORE**, Plaintiffs, Keehan Tennessee Investment, LLC, David Keehan, Donald J. Keehan, Sr., Durham Ridge Investments, LLC, Westlake Briar, LLC, Keehan Trust Funding, LLC, Donald J. Keehan, Jr. and 951 Realty Ltd., pray for judgment against Defendants, Guardian Capital Advisors, Inc., Kenneth Miller, Development Finance, L.P., George Cresson and Praetorium Secured Fund I, L.P., jointly and severally, as follows:

A.     As to Count One, judgment against Defendants GCA, Development and Cresson in an amount in excess of $25,000.00 and any such other or additional sum as may be determined at the time of trial;

B.     As to Count Two, for an Order equitably subordinating any claim or interests held or purported to be held by Defendants GCA, Development, and/or PSFL in the Bridge Loan Note, the Guarantees or any of the Mortgages or Security Agreement securing the Bridge Loan and rendering

any and all obligations of the Plaintiffs thereunder void and unenforceable and ordering the release and discharge of any liens, claims or interests held by Defendants of record;

C.  As to Count Three, an award of damages against Defendants GCA, Miller, Development, and Cresson in an amount in excess of $25,000.00, as well as punitive damages, and any such other or additional sum as may be determined at the time of trial;

D.  As to Count Four, an Order from this Court declaring that Cresson is the alter ego of Development and PSFL, and an award of damages an award of damages against Defendants in an amount in excess of $25,000.00.

E.  As to all Counts, interest at the legal rate both pre-judgment and post-judgment, attorneys' fees, costs and expenses incurred and to be incurred in this proceeding; and

F.  For such other relief as the Court may deem just, proper and equitable.

Respectfully submitted,

/s/Robert R. Kracht
Robert R. Kracht  (#0025574)
rrk@mccarthylebit.com
Charles J. Pawlukiewicz  (#0011499)
cjp@mccarthylebit.com
Christina E. Niro  (#0087272)
cen@mccarthylebit.com
McCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., L.P.A.
101 West Prospect Avenue
1800 Midland Building
Cleveland, Ohio  44115
(216) 696-1422
(216) 696-1210 (facsimile)

Attorneys for Plaintiffs

15

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been electronically filed with this Court this 22nd day of May, 2014.

/s/Robert R. Kracht
Robert R. Kracht  (#0025574)
rrk@mccarthylebit.com

605559