ROBERT J. CALDWELL, ESQ.
Nevada Bar No. 007637
JASON M. WILEY, ESQ.
Nevada Bar No. 009274
**KOLESAR & LEATHAM**
400 South Rampart Boulevard
Suite 400
Las Vegas, Nevada  89145
Telephone:  (702) 362-7800
Facsimile:  (702) 362-9472
E-Mail:      rcaldwell@klnevada.com
                  jwiley@klnevada.com

Edmund W. Searby (PHV Pending)
Baker & Hostetler LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, Ohio  44114-3482
Telephone:  216.621.0200
Facsimile:  216.696.0740
E-Mail:      esearby@bakerlaw.com

Attorneys for Defendant, GUARDIAN
CAPITAL ADVISORS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KEEHAN TENNESSEE INVESTMENTS, LLC, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GUARDIAN CAPITAL ADVISORS, INC., et al., <br><br> Defendants. | CASE NO. 3:14-cv-00500-RCJ-WGC <br><br> **MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS GUARDIAN CAPITAL ADVISORS, INC. AND KENNETH A. MILLER TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

## BACKGROUND

Plaintiffs Keehan Tennessee Investment, LLC, David Keehan, Donald J. Keehan, Sr., Durham Ridge Investments, LLC, Westlake Briar, LLC, Keehan Trust Funding, LLC, Donald J.

Keehan, Jr., and 951 Realty Ltd. (collectively, "Plaintiffs") brought this action against, among others, Guardian Capital Advisors, Inc. and Kenneth Miller (collectively, "Guardian") asserting three causes of action—breach of contract, fraud, and economic duress/equitable subordination[1]—arising out of Guardian's alleged failure to close a $24.5 million loan related to Plaintiffs' property development in Tennessee (the "Stillwater" project). (Am. Compl. ¶¶ 15-21, 48-62.)

After Plaintiffs' original lender refused to continue funding Plaintiffs' project, a second lender—TN Fore Investment Partners, LLC ("TN Fore")—acquired the original lender's security interest, along with a minority ownership interest in the project. (*Id.* ¶¶ 17-18.) But soon after, Plaintiffs defaulted on the loans, and TN Fore sought foreclosure and a buyout of its minority share. (*Id.* ¶¶ 19-20.)

Plaintiffs then turned to Guardian to help finance a $24.5 million "Take Out Loan" and a $3.5 million "Construction Loan" that would allow Plaintiffs to pay off the existing loans to TN Fore and buy out TN Fore's minority interest, as well as continue construction on the project. (*Id.* ¶¶ 21, 23.) Ultimately, Guardian exchanged written proposals with the Plaintiffs, including two loan commitment letters. (*Id.* Exs. A-1, A-2.) While the commitment letters set out the "general terms of the contemplated Credit Facility," they established no binding commitment by either party to enter a final loan transaction absent "execution and delivery of definitive documentation." (*Id.* Ex. A-1 at 1, Ex. A-2 at 7.) Indeed, the commitment letters specifically state that "[i]f the Closing of the Loan has not occurred by the Expiration Date"—specifically, April 15, 2014—"all rights of [Plaintiffs] to obtain the loan shall automatically and immediately terminate without notice."[2] (*Id.* at 2.)

---

[1] With respect to Count Two—ostensibly a claim to invalidate certain loan agreements under the principles of "economic duress" and "equitable subordination"—Plaintiffs have not alleged, and for that matter cannot allege, that they have received any loans from Guardian. Thus, to the extent Plaintiffs have asserted Count Two against Guardian, that claim must be dismissed.

[2] Plaintiffs allege that the parties extended the April 15, 2014 deadline to April 24, 2014 by oral agreement of the parties. But because the loan never closed—either by April 15 or April 24—Plaintiffs' rights under the commitment letters terminated automatically.

After Plaintiffs failed to consummate a final loan transaction with Guardian, Plaintiffs obtained a Take Out Loan from another source, avoiding foreclosure. (Am. Compl. ¶ 44.) Nevertheless, Plaintiffs brought this suit.

## ARGUMENT

I. **PLAINTIFFS' FRAUD CLAIM—WHICH MERELY RESTATES ITS BREACH OF CONTRACT CLAIM AND IS NOT ALLEGED WITH SPECIFICITY—FAILS AS A MATTER OF LAW.**

    A. **PLAINTIFFS' FRAUD CLAIM FAILS TO SATISFY BOTH THE PLAUSIBILITY STANDARD OF RULE 12(B)(6) AND THE SPECIFICITY REQUIREMENT OF RULE 9(B).**

To avoid dismissal, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotations omitted). Thus, a complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

Moreover, a reviewing court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotations omitted). In reviewing the sufficiency of a complaint, the Court should consider only whether the complaint's well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Id.* at 679. *See also, Silvas v. Bank of Am. Home Loans*, No. 2:12–CV–1994–KJD–NJK, 2013 WL 271506, at *2 (D. Nev. Jan. 23, 2013) ("[L]egal conclusions, bare assertions, or merely conclusory" allegations "'are not entitled to the assumption of truth.'") (quoting *Iqbal*, 556 U.S. at 679).

Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the "well-pleaded factual allegations" must demonstrate "more than the mere possibility of misconduct;" they must "plausibly give rise to an entitlement to relief." *Id.*

//

In addition, Plaintiffs must plead their fraud claim with enhanced specificity. *See* Fed. R. Civ. P. 9(b). "To avoid dismissal for inadequacy under Rule 9(b), [the] complaint [must] state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quotations omitted). Thus, where a plaintiff fails to "allege, *at a minimum*, the 'who, what, when, where, and how' of [the] fraud," the complaint must be dismissed. *In re Hansen Natural Corp. Secs. Litig.*, 527 F. Supp. 2d 1142, 1153 (C.D. Cal. 2007) (emphasis added). Because Plaintiffs cannot meet the minimum pleading requirements of Rule 9(b) or Rule 12(b)(6), their fraud claims fail as a matter of law.

Plaintiffs allege the following facts in support of the fraud claim: (1) "At all times relevant and as evidenced by the Commitment, [Guardian], Development Finance, and Cresson represented to Plaintiffs that they were prepared to fund the Take Out Loan"; (2) Plaintiffs received "assurances from [Guardian], Development, and Cresson that funding would arrive quickly"; (3) Guardian "continued to represent to Plaintiffs that it would be able to close the Take Out Loan in sufficient time"; and (4) "[Guardian], Miller, Development, and Cresson and their respective agents and employees told Plaintiffs that [defendants] had the funds available to make the Take Out Loan and Construction Loan." (Compl. ¶¶ 24, 26, 39, 56.)

Critically, these allegations fail to identify a single specific misrepresentation made by Guardian—let alone the time, place, or specific content of such representations. Under Rule 9(b), this lack of specificity is fatal to the fraud claim.

Apart from identifying the general time period of the parties' relationship, the complaint is devoid of specific dates on which the alleged misrepresentations occurred. (*See* Compl. ¶¶ 21, 39.) That alone justifies dismissal under Rule 9(b). *Bly-Magee v. Lungren*, 214 F. App'x 642, 644 (9th Cir. 2006) (affirming dismissal under Rule 9(b) where plaintiff "failed to identify specific times and dates on which the fraud occurred"); *Bartlett v. Arthur Andersen LLP*, 55 F. App'x 819, 820 (9th Cir. 2003) (same); *Atl. Richfield Co. v. Ramirez*, 176 F.3d 481, 481 (9th Cir. 1999) ("[M]erely identifying a period spanning several months does not adequately identify the time of the misrepresentations.").

But the defects in the Amended Complaint do not end there. Plaintiffs likewise fail to "identify the specific persons who made the statements," as Rule 9(b) requires. *Atl. Richfield Co.*, 176 F.3d at 481.

To be sure, Plaintiffs plead generally that defendants Guardian, Miller, Development Finance, and Cresson misrepresented their ability to fund the loan in a timely fashion. (Compl. ¶¶ 24, 26, 39, 56.) But "Rule 9(b) does not allow a complaint to merely lump multiple defendants together" in alleging fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotations omitted). Rather "a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." Because Plaintiffs utterly fail to identify specific misrepresentations attributable to each defendant, or for that matter, which of the eight plaintiffs relied on the misrepresentations, their fraud claims fail. *See Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1162-63 (N.D. Cal. 2011) (dismissing fraud claims where plaintiff did not "identify, even by title or description, the person or persons who made the representations, let alone which Defendant is charged with what misconduct").

Nor, for that matter, do Plaintiffs indicate where or in what manner—phone, email, face-to-face—the representations occurred. *See Walker v. Equity 1 Lenders*, No. 09cv325 WQH (AJB), 2010 WL 234942, at *7 (S.D. Cal. Jan. 12, 2010) (dismissing in part because the plaintiff did not allege "the precise location . . . of the misrepresentations"); *Moses v. Innoprise Software*, No. C-12-05271 EDL, 2013 WL 3927660, at *5 (N.D. Cal. July 26, 2013) (dismissing fraud claim where plaintiff did not state "whether the alleged misrepresentations were written or oral").

Finally, Plaintiffs have not sufficiently identified the content of the alleged misrepresentations. Indeed, Plaintiffs' amended complaint "only include[s] broad generalizations" regarding the alleged misrepresentations, but "fail[s] to allege the specific content of the fraudulent statements." *Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (dismissing fraud claim); *see also Saterbak v. MTC Fin. Inc.*, No. 3:10-cv-501-RCJ-VPC, 2011 WL 484300, at *6 (D. Nev. Feb. 4, 2011) (dismissing fraud claim where plaintiff made only "generalized allegations of fraud against [defendants], but never identifie[d] the specific content of their false representations").

Thus, because Plaintiffs fail to specifically allege any of the necessary elements of their fraud claim, those claims should be dismissed under Rule 9(b).

### B. THE ALLEGED MISREPRESENTATIONS ARE MERELY ALLEGED PROMISES TO ACT AND THUS ARE NOT ACTIONABLE AS FRAUD.

Even if properly alleged, which they are not, Plaintiffs' fraud claims would still fail to state a valid cause of action since its fraud claim rests on the same alleged misconduct—Guardian's failure to consummate the Take Out Loan by the foreclosure deadline—as its breach of contract claim.

Indeed, the only specific representation Plaintiffs can point to is a statement from the loan commitment letter itself—namely, that "the $24.5 Million Take Out Loan [would] be made . . . by April 15, 2014." (Opp. at 12; *see also* Am. Compl. ¶ 24 (alleging that "as evidenced by the Commitment [letters], [Guardian], Development Finance and Cresson represented to Plaintiffs that they were prepared to fund the Take Out Loan.").)

But under Ohio law[3], "[a]n unfulfilled promise to do something in the future, gives rise to an action for breach of contract, not a fraudulent misrepresentation." *Gervace v. Master Foods, Inc.*, No. 37643, 1978 WL 218137, at *5 (Ohio Ct. App. Oct. 12, 1978). *See also, Arciero & Sons, Inc. v. Shell W. E & P, Inc.*, 990 F.2d 1255 (Table), 1993 WL 77274, at *2 (9th Cir. 1993) ("Fraudulent representations must concern existing material facts. Predictions of future events are ordinarily considered non-actionable.").

Indeed, "Ohio courts repeatedly have stated that it is no tort to breach a contract, regardless of motive." *Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 602 (6th Cir. 1988). "To hold otherwise would be to convert every unfulfilled contractual promise, i.e., every alleged breach of a contract, into a tort claim." *Telxon Corp. v. Smart Media of Delaware, Inc.*, Nos. 22098, 22099, 2005 WL 2292800, at *13 (Ohio Ct. App. Sept. 21, 2005) (quotations omitted).

//

---

[3] The Loan Commitment Term Sheet relied on by Plaintiffs provides that "all matters arising out of or related [to] . . . [the] Term Sheet and the Loan Documents . . . will be governed by the laws of the State of Ohio." (Compl. Ex. A-2.)

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Tel: (702) 362-7800 / Fax: (702) 362-9472

The crux of Plaintiffs' fraud claim is that Guardian failed to timely close on the proposed Take Out Loan after promising to do so. Thus, on its face, Guardian's alleged promise to finalize the Take Out Loan is just a contractual "promise to do something in the future" which cannot give rise to a claim in tort. *Id.*

Even accepting Plaintiffs' allegations as true, Guardian's failure to fulfill its contractual obligation to close the loan before the foreclosure sale cannot state a claim for fraud, as "the mere proof of nonperformance does not prove a lack of intent to perform." *Captiva, Inc. v. Viz Commc'ns, Inc.*, 85 F. App'x 501, 506 (6th Cir. 2004) (quoting *Wall v. Firelands Radiology, Inc.*, 106 Ohio App. 3d 313, 666 N.E.2d 235, 243 (1995)). Indeed, "[i]t would be as wrong morally as legally, as offensive to logic as to law, to hold that mere denial and nonperformance"—which is all that Plaintiffs have alleged here—"are evidence that, if a promise was made, it was made fraudulently." *Id.*

Nor is Plaintiffs' conclusory allegation that Guardian misrepresented its ability to fund the loans sufficient to state a claim for fraud. Absent from the Amended Complaint is any fact to support a claim that Guardian lacked sufficient funds to close the loan. Without "sufficient factual matter" to state a "plausible"—rather than merely possible—fraud claim, Count One of Plaintiffs' Amended Complaint cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Because Guardian's failure to close the Take Out Loan by the foreclosure deadline—if actionable at all—merely constitutes a breach of the commitment letters, Plaintiffs' fraud claim should be dismissed.

### II. PLAINTIFFS' BREACH OF CONTRACT CLAIMS CONTRADICT THE TERMS OF THE COMMITMENT LETTERS—WHICH CANNOT BE ALTERED BY ORAL AGREEMENT—AND THUS FAIL AS A MATTER OF LAW.

#### A. THE EXPRESS TERMS OF THE COMMITMENT LETTERS PRECLUDE PLAINTIFFS' BREACH OF CONTRACT CLAIMS.

The first purported "commitment letter" states only that Guardian has received and "is . . . processing the application of Keehan . . . for financing in respect of the [Stillwater] Property." (Compl. Ex. A-1 at 1.) It merely purports to set out "[t]he general terms of the *contemplated* Credit Facility," but creates no binding commitment on either party to enter a final

loan transaction. (*Id.*)

Similarly, the second "commitment letter" dated March 4, 2014 describes its contents in the "Re:" line as a "*Proposed* Credit Facility." (Compl. Ex. A-2 at 1.) The letter makes clear that it "does not include all provisions that shall be contained in the Loan Documents." (*Id.*) The attached "Loan Commitment Term Sheet"—incorporated by reference into the second commitment letter—further states that "any binding obligation of [Guardian or Plaintiffs] with respect to the *proposed* transaction shall arise *only* upon execution and delivery of definitive documentation." (*Id.* at 7) (emphasis added). And the commitment letter itself provides that "[i]f the Closing of the Loan has not occurred by the Expiration Date"—specifically, April 15, 2014—"all rights of [Plaintiffs] to obtain the loan shall automatically and immediately terminate without notice." (*Id.* at 2.)

As Plaintiffs allege, the proposed loan failed to close by that April 15 deadline—automatically terminating its rights under the commitment letters. (Compl. ¶ 37.) Moreover, Plaintiffs have not produced or even alleged that any party delivered "definitive documentation" as required by the Loan Commitment Term Sheet. Accordingly, Plaintiffs' complaint—judged against the plain terms of the commitment letters on which its breach of contract claim is based—does not state a claim upon which this Court can grant relief.

### B. THE ALLEGED ORAL MODIFICATION OF THE COMMITMENT LETTERS DOES NOT ESTABLISH AN ENFORCEABLE AGREEMENT AND IN ANY EVENT IS NOT ENFORCEABLE UNDER OHIO LAW.

Finally, to the extent Plaintiffs have alleged a breach of an oral modification to extend the deadline from April 15, 2014 to April 24, 2014 to complete the loan, that claim fails as a matter of law.

First, Plaintiffs fail to explain how extending the closing deadline from April 15th to April 24th saves its breach of contract claim, as Plaintiffs never allege that the proposed loan closed on *any* date, let alone before April 24, 2014. Indeed, all of Plaintiffs' claims arise out of Guardian's *failure* to close the loan, which Plaintiffs say forced them to seek alternative

//
//

financing. (*See* Am. Compl. ¶ 43.) Because the proposed loan failed to close by both the contractual April 15th deadline and the allegedly modified April 24th deadline, "all rights of [Plaintiffs] to obtain the loan . . . automatically and immediately terminate[d] without notice." (Am. Compl. ¶ 37 and Ex. A-2 at 2.)

Second, even if Plaintiffs could allege that the loan closed before the extended April 24th deadline, oral modifications are precluded by the terms of the contract. The March 3, 2014 commitment letter specifically states: "This Commitment may not be amended or modified except in a writing executed by both parties." (Am. Compl. Ex. A-2 at 3.)

Finally, the alleged oral modification is barred by Ohio's statute of frauds, which requires that all interests in land be granted in writing. Ohio Rev. Code § 1335.04. Here, the loan commitment letters purport to grant Guardian a security interest in the Stillwater property, which constitutes an interest in land. (Am. Compl. Ex. A-2 at 8, defining "Collateral"); *Carr v. Acacia Country Club Co.*, 970 N.E.2d 1075, 1089 n.23 (Ohio Ct. App. 2012) (equating a "security interest" in real property with an "interest in[] land"). Similarly, Ohio's statute of frauds prohibits oral contracts that contemplate performance beyond one year. Ohio Rev. Code § 1335.05. The loan commitment, however, sets a two-year repayment period, again implicating the statute of frauds. (Am. Compl. Ex. A-2 at 8, defining "Term.")

Accordingly, even accepting Plaintiffs' allegations as true, the parties' purported oral modification is ineffective as a matter of law. The parties are bound to the terms of the written loan commitment letters which are facially conditional—rather than final—commitments to lend. Thus, Plaintiffs cannot maintain a breach of contract claim, and Count One should be dismissed.

//
//
//
//
//
//
//

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss all claims against Defendants Guardian Capital Advisors and Kenneth Miller.

DATED this 26th day of November, 2014.

                                        **KOLESAR & LEATHAM**

/s/ *Jason M. Wiley*

By _____
ROBERT J. CALDWELL, ESQ.
Nevada Bar No. 007637
JASON M. WILEY, ESQ.
Nevada Bar No. 009274
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145

And

Edmund W. Searby (PHV Pending)
Baker & Hostetler LLP
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, Ohio 44114-3482

Attorneys for Defendant, GUARDIAN CAPITAL ADVISORS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Kolesar & Leatham and that on the 26th day of November, 2014, I caused to be served a true and correct copy of foregoing MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS GUARDIAN CAPITAL ADVISORS, INC. AND KENNETH A. MILLER TO DISMISS PLAINTIFFS' AMENDED COMPLAINT in the following manner:

(ELECTRONIC SERVICE) Pursuant to Rule 5-4 of the Local Rules of Civil Practice of the United States District Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

*/s/ Christi Calueci*
An Employee of KOLESAR & LEATHAM